## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

# AT AMERICUS,

## JULY TERM, 1848.

No. 1.—WILLIAM S. NELL, plaintiff in error, *vs.* JOHN SNOWDEN, Jr. *et al.* defendants in error.

[1.] The Superior Courts in this State have power and authority to grant new trials in Equity causes.

[2.] As a general rule, the holder of negotiable paper is p esumed to be *prima facie*, a *bona fide* holder for valuable consideration, and he is not bound to prove that he has given value for it, until the other party has established the want, or failure, or illegality of the consideration; or that the note had been lost, or stolen, before it came to the possession of the holder.*

In Equity. Muscogee Superior Court. Motion for new trial, decided by Judge ALEXANDER.

This was a bill filed in Muscogee Superior Court, by William S. Nell, originally, against John Snowden, one of the defendants, seeking to enjoin Snowden from proceeding on a mortgage made to him by Nell the plaintiff, and praying an adjustment of the accounts between them. The bill charged, that in January, 1843, Snowden had agreed to build for Nell a steamboat, for which he was to receive $9000; one third when the building of the boat was commenced, one third when it was finished, and the remainder in three and six months after its delivery; for which last, a lien was to be given on the boat. The bill further charged, that when the first payment became due, it was agreed by parol, that Snowden should build for Nell another boat; and in considera-

---

*NOTE.—See *Nisbet vs. Lawson*, 1 Kelly, 284, & *Field vs. Thornton*, Ibid 306. *Matthews vs. Poythress*, 4 Ga. Rep. 287.

tion, that Nell then paid Snowden a much larger amount than was due at the time on the first boat, Snowden agreed that he would give Nell time of payment on the second boat, six and eighteen months after its delivery. The bill further charged, that before the first boat was delivered, Nell had paid, in various amounts and ways, to Snowden, $11.259 87, and that he had claims against him, arising out of the transaction, to the amount of some $1900 more; but as the vouchers were not present, and some of the matters unsettled, plaintiff Nell, made his mortgage deed to Snowden, to secure the payment of the unascertained balance.

The bill further charged, that Snowden had refused to deliver the second boat according to his agreement, and had made his affidavit and foreclosed under the Statute, the mortgage, claiming as due to him under the same, as the balance, the sum of $3604 34. The bill prayed that the mortgage *fi. fa.* might be enjoined, and settlement made between the parties. After the filing of the bill, defendants Hughs, and Sibbet, and Jones, brought their several actions in the Superior Court of Muscogee county, on several notes and drafts made by Nell to Snowden, and negotiated, as they claimed, by him to them. The bill was then amended, charging Hughs, and Sibbet, and Jones, with combination with Snowden, praying injunctions against them, and a discovery of the facts from all the defendants.

Snowden answered, denying any agreement to give indulgence on the payment for the second boat, and justifying his refusal to deliver it, until he was paid for building it. He denied further, the claims for services by Nell, and some other items, but admitted that he had received from Nell, in his (Nell's) notes and drafts, and in cash, $11,239 78; but he set up that the mortgage was given to secure the payment of various notes and drafts, taken by him from Nell, in payment of the above amount—that a part of said notes were still unpaid in his possession, and that a part of them had been negotiated by him to Hughs, and Sibbet, and Jones, which had been protested for non-payment, and on which he was now liable; and that there was really due him on the first boat, in consequence of these protests and non-payments, the amount claimed in his affidavit for foreclosure. The answer of Hughs denied all notice of any failure in the consideration of Nell's notes and drafts held by him, and claimed to be a bona fide holder of the same. Sibbet and Jones, in their answers, denied

Nell vs. Snowden and others.

all notice of the consideration of said drafts and notes, and claimed to be innocent purchasers of the notes and drafts before the same were due, of Nell in their possession, though they admitted that they had got them from Snowden, and that they knew at the time, that Snowden was building a boat for Nell. The notes and drafts held by Sibbet and Jones were, one for $1035, dated 16th September 1843, payable three months after date; one for $1000, dated 16th September, 1843, due ninety days after date, *on account of the steam-boat Charleston*, (which latter note was sued in the name of Snowden for the use of Sibbet and Janes;) and one for $525, dated 18th September 1843, and due ninety days after date. It was sworn on the trial, by one Robinson, that Nell had in October, 1843, told Sibbet and Jones that he would not pay any note made by him for the *Viola*, (the second boat.)

The Jury decreed that Nell should pay to Snowden, $1174 70, as the balance due him, and three hundred and eighty three dollars and 75cts. interest. They decreed to Hughs the amount of his demand, but they perpetually enjoined Sibbet and Jones from proceeding in their actions.

Whereupon, Sibbet and Jones moved the Court below for a new trial, which the Court below granted; to which the plaintiff Nell excepted, and assign, as error—

1st. The granting of a new trial in any equity cause.

2d. The granting of a new trial in this case.

HINES HOLT, for plaintiff in error, insisted—

1st. That in Georgia the Jury and the Judge constitute the Chancellor.

2d. That the Judge in Georgia has not the right to grant a new trial in an Equity case, on the ground that the Jury found contrary to the evidence in the cause.

3d. That if such right existed, it was improvidently exercised in this case. And relied on the *Judiciary Act of* 1799, *and* 3 *Kelly*, 168.

JONES, BENNING & JONES, for defendant.

*By the Court.*—WARNER, J. delivering the opinion.

The ground of complaint here is, that the Court below granted a new trial to the defendants.

[1.] It is contended, that in this State, after an Equity cause has been tried by a jury under our practice, the Court has no authority to grant a new trial. The Judiciary Act of 1797 declares, that in Equity causes, " the Superior Courts shall submit the merits of the suit, with the evidence thereon, and all matters respecting the same, to a special jury, who shall give their verdict on the same." *Malbury & Crawford's Dig.* 273. The Judiciary Act of 1792, contained a similar provision. The Judiciary Act of 1797, was repealed by the Judiciary Act of 1799. *Marbury & Crawford*, 308. The Judiciary Act of 1799, contains no provision for submitting Equity causes to a special jury. The Constitution which was adopted in 1798, declares that " trial by jury, as *heretofore used* in this State, shall remain inviolate." *Prince Dig.* 912. By referring to the Acts of 1792 and 1797, we find that the trial by jury was *used* in Equity causes in this State before and at the time of the adoption of the Constitution. The right to submit Equity causes for trial to a special jury, is derived from the Constitution, and not from the Judiciary Act of 1799. By the first section of the 3d article of the Constitution, the Superior Courts are empowered " to grant new trials on proper and legal grounds." *Prince*, 910. By the 57th section of the Judiciary Act of 1799, it is provided, "that in any case which has arisen since the signing of the present Constitution, or which may hereafter arise, of a verdict of a special jury being given contrary to evidence, and the principles of *justice and of equity*, it shall and may be lawful for the Judge presiding, to grant a new trial before another special jury, in the manner prescribed by this Act, provided, that twenty days notice be given by the party applying for such new trial, to the adverse party, of his intention, and the grounds of his application." *Marbury and Crawford*, 308. This provision of the Act, we think, was *specially* intended to apply to *Equity* causes, for the reasont hat the Legislature, in a previous section of the same Act, declare, " that the Superior Courts shall have power to correct errors and grant new trials, in any cause depending in any of the said Superior Courts, in such manner and under such rules and regulations as they may establish, and according to law and the usages and customs of Courts. *See 55th section Judiciary Act*, 1799. *Marbury and Crawford*, 307.

By the Judiciary Act of 1799, Equity jurisdiction is conferred

Nell vs. Snowden and others.

upon the *Superior Courts.* It is true, the Superior Courts and the special jury, under our system of practice, perform the same duties as the Chancellor and Master in Chancery in England, but I know of no Act of the Legislature which denominates either the Judges or the special jurors as *Chancellors.*

[2.] This bill was filed by the complainant for a settlement of accounts between himself and Snowden, one of the defendants, Hughs, and Sibbet, and Jones, are made defendants, because they are the holders of negotiable paper given by the complainant to Snowden, and negotiated by him to the other defendants and who have instituted suit thereon against the complainant. In the decree rendered in the Court below, provision is made for the payment of Hughs's demand, but the suits of Sibbet and Jones are *perpetually enjoined.* Sibbet and Jones, in their answers, deny *most positively* all knowledge of the consideration of the notes and draft, as well as any notice thereof, or of any just or equitable defence to the same by Snowden ; that they were *bona fide* purchasers of the paper in the fair course of trade, and for a valuable consideration, and there is no evidence furnished by the record had on the trial, which in our judgment is sufficient to show, that Sibbet and Jones were not *bona fide* holders of the notes and draft, and entitled to be protected in a Court of Equity. The general rule is, that the holder of negotiable paper is presumed to be, *prima facie,* a *bona fide* holder, for a valuable consideration, and that he is not bound to establish that he has given any value for it, until the other party has established the want, or failure, or illegality of the consideration, or that the note had been lost or stolen, before it came to the possession of the holder. *Story on Promisory notes,* 220, *section* 196. *Swift vs. Tyson,* 16 *Peters, Rep.* 1. The only evidence which the complainant relied on, is the testimony of Robinson, who states, that in October, 1843, Nell told Sibbet and Jones, that he would not pay any note made by him for the boat Viola. Whether this information was communicated to them before they became the holders of the paper, or afterwards, the record is silent. The presumption is, however, that they were the *holders* of the paper at the time, or why notify *them,* he would pay it. The discretion of the Court below was, in our judgment, properly exercised, in granting the new trial, and we take pleasure in affirming it.